PORTER v PORTER

Docket Nos. 284086 and 285095. Submitted August 11, 2009, at Detroit. Decided September 1, 2009, at 9:05 a.m.

The plaintiff, Patricia Porter, also known as Patricia Henkel and Patricia Gravel-Henkel, obtained a divorce from the defendant, Edward W. Porter. The defendant filed a motion in the Wayne Circuit Court, Family Division, for the issuance of an order to show cause why the plaintiff should not be held in contempt for failing to comply with the court's prior order concerning parenting time and telephone contact between the defendant and the parties' minor child. The court, Megan Maher Brennan, J., issued an order to show cause and after a July 27, 2007, hearing, found the plaintiff in contempt, ordered the plaintiff to allow the parenting time, and ordered the plaintiff to pay a $1,000 sanction by August 29, 2007. The court reserved ruling on the plaintiff's request for attorney fees. After the plaintiff failed to pay the sanction or comply with the order regarding parenting time, the defendant again sought an order to show cause why the plaintiff should not be held in contempt. The plaintiff filed an answer, but only appeared by counsel at the hearing on the motion. The court ordered the plaintiff to pay the $1,000 previously ordered sanction and an additional $3,100 for the defendant's attorney fee. The court ordered the parties to continue to attend family reconciliation counseling and warned the plaintiff that she would be sanctioned $2,000 if she failed to cooperate with the counselor. The order also included specific travel plans for the child's visitation with the defendant. The defendant thereafter filed yet another motion for an order to show cause why the plaintiff should not be held in contempt for failing to pay $4,100 in sanctions and attorney fees previously ordered and for not cooperating with the family counselor. Following a show cause hearing, the court found the plaintiff in contempt and on February 13, 2008, ordered her jailed for two days unless she paid $4,100. The court sanctioned the plaintiff an additional $2,000 for her failure to cooperate with the family counselor. The court also entered a separate order concerning the fees and the authority of the family counselor. The plaintiff appealed by right the February 13, 2008, order of con-

tempt (Docket No. 284086) and by leave granted the July 27, 2007, order of contempt (Docket No. 285095). The appeals were consolidated.

The Court of Appeals *held*:

1. The contempt proceedings were for civil contempt, not criminal contempt. The plaintiff had the right to rudimentary due process consisting of notice and an opportunity to present a defense, and the defendant had the burden of proving by a preponderance of the evidence that the order he was seeking to enforce was violated.

2. The defendant's failure to attach a supporting affidavit to his motions for orders to show cause, as required by MCR 3.606(A), did not deprive the trial court of its jurisdiction over the contempt proceedings. The lack of notarization does not warrant the setting aside of the trial court's contempt orders. Even if the contempt proceedings were procedurally defective, the trial court was not deprived of its jurisdiction over the subject matter or the parties. The plaintiff was accorded rudimentary due process and there was sufficient evidence of willful violation of the trial court's orders.

3. The plaintiff's claim of poverty was spurious and without merit. The trial court did not err by summarily rejecting it before finding the plaintiff in contempt for failing to pay the court-ordered sanctions and attorney fees. The trial court did not abuse its discretion by declining to conduct an evidentiary hearing regarding the plaintiff's claimed indigence.

Affirmed.

*Bruce T. Leitman* for the plaintiff.

*Gentry Law Offices, P.C.* (by *Kevin S. Gentry*), for the defendant.

Before: CAVANAGH, P.J., and MARKEY and DAVIS, JJ.

MARKEY, J. In Docket No. 284086, plaintiff appeals by right a February 13, 2008, contempt order. In Docket No. 285095, plaintiff appeals by leave granted a July 27, 2007, contempt order.[1] We affirm.

---

[1] Each appeal arises from the same lower court divorce proceeding and involves defendant's efforts to enforce the trial court's orders regarding

The parties are divorced and have one minor child who lives with plaintiff in Michigan. The divorce action, originally filed in Massachusetts, was transferred to Michigan in 1995. Defendant continued to reside in Massachusetts, but at the time of these proceedings he had relocated to Exeter, New Hampshire. The child has a history of being contentious regarding visiting his father. The register of actions in this case leading up to the instant contempt proceedings consists of 14 pages and 279 entries. On May 3, 2005, the trial court appointed a parenting time coordinator to resolve parenting time issues between the parties. The parenting time coordinator reported recommendations to the court, and defendant moved the court for the entry of an order adopting them. Instead, the trial court appointed a guardian ad litem and scheduled an evidentiary hearing. The guardian ad litem recommended that defendant have continued parenting time, telephone contact, and that the child receive mental health therapy. The trial court adopted these recommendations in a June 25, 2007, order. Relevant to this appeal, the trial court ordered parenting time for defendant, including two weeks of summer visitation commencing June 30, 2007, and that defendant have at least 10 minutes weekly telephone contact with the child.

On July 17, 2007, defendant moved for the issuance of an order to show cause why plaintiff should not be held in contempt because the ordered summer visitation and telephone contact did not occur. On July 18, 2007, the trial court issued its order to show cause and after a July 27, 2007, hearing, found plaintiff in contempt. The court ordered that defendant be provided

parenting time. This Court consolidated these appeals to advance the efficient administration of the appellate process. Unpublished order of the Court of Appeals, entered March 27, 2009 (Docket Nos. 284086 and 295095).

rescheduled summer visitation from August 5, 2007, through August 19, 2007. The contempt order also sanctioned plaintiff $1,000 to be paid by August 29, 2007. The court reserved defendant's request for attorney fees. Plaintiff appeals this order in Docket No. 285095.

Plaintiff did not pay the $1,000 sanction. Also, the court-ordered August visitation did not occur, and defendant did not have parenting time for Thanksgiving 2007. On December 12, 2007, defendant filed another motion for an order to show cause why plaintiff should not be held in contempt of court for failing to comply with the trial court's orders. Plaintiff filed an answer to the motion but only appeared by counsel at the December 19, 2007, hearing. The trial court, again, ordered plaintiff to pay both the previously ordered $1,000 sanction and an additional $3,100 for defendant's attorney fees. Further, the court adjourned the show cause hearing to the next day, to be cancelled if plaintiff and the child attended a family counseling session to be scheduled for later in the day on December 19, 2007. In addition, the court ordered the parties to continue to attend family reconciliation counseling and warned that plaintiff would be sanctioned $2,000 if she failed to cooperate with the counselor. The court's December 19, 2007, order also included specific travel plans for the child to visit defendant during his Christmas parenting time.

On January 31, 2008, defendant filed yet another motion for an order to show cause why plaintiff should not be held in contempt for failing to pay the $4,100 in sanctions and attorney fees arising out of the July 27 and December 19, 2007, show cause hearings and for not cooperating with the family counselor by not approving a consent order the counselor required to

clarify her authority and fees. At a February 13, 2008, show cause hearing, the trial court found plaintiff in contempt and ordered plaintiff jailed for two days unless she paid the $4,100.[2] The court also sanctioned plaintiff $2,000 for her failure to cooperate with the family counselor by not signing the consent order. The trial court entered a separate order containing the provisions of the proposed consent order by appointing the family counselor as the parties' child specialist and addressing her fees and authority. In Docket No. 284086, plaintiff appeals the order finding her in contempt.

Plaintiff first argues that the trial court abused its discretion by finding her in contempt because the proceedings were criminal, not civil. Plaintiff contends that she was punished for violating the trial court's June 25, 2007, order, but was not accorded the procedural protection of a criminal contempt proceeding. Moreover, she argues that because an order to show cause was issued without a supporting affidavit as required by MCR 3.606(A), the trial court lacked jurisdiction over the contempt proceeding. We disagree.

We review a trial court's issuance of a contempt order for an abuse of discretion. *DeGeorge v Warheit*, 276 Mich App 587, 591; 741 NW2d 384 (2007). Moreover, a

---

[2] We note that the record does not support the suggestion of plaintiff's counsel at oral argument that this "sentence" was executed, i.e., that plaintiff went to jail. On March 5, 2008, plaintiff moved the trial court for a stay of proceedings and an appeal bond, and stated that she had paid defendant's attorney $4,100 on February 13, 2008, as ordered by the court. Defendant's attorney responded to this motion by acknowledging that she was paid the $4,100 on February 13, 2008. This response also details that defendant's costs in pursuing enforcement of court-ordered parenting time, apart from his attorney fees, exceeded the total of $3,000 in sanctions ordered by the trial court, and included payments of $3,442.50 for psychological counseling for the child, $1,575 for the guardian ad litem, and $2,758.78 for the family counselor.

trial court's factual findings are reviewed for clear error and questions of law are reviewed de novo. *Id.* The abuse of discretion standard recognizes that there will be circumstances where there is no single correct outcome and which require us to defer to the trial court's judgment; reversal is warranted only when the trial court's decision is outside the range of principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

First, we reject plaintiff's argument that the contempt proceedings at issue here were criminal. "Criminal contempt differs from civil contempt in that the sanctions are punitive rather than remedial." *DeGeorge, supra* at 591. "Criminal contempt is a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both." *In re Contempt of Henry*, 282 Mich App 656, 666; 765 NW2d 44 (2009) (quotation marks and citations omitted). Criminal contempt is intended to punish the contemnor for past conduct that affronts the dignity of the court. *Jaikins v Jaikins*, 12 Mich App 115, 120; 162 NW2d 325 (1968). Thus, when a court exercises its criminal contempt power it is not attempting to force the contemnor to comply with an order, but is simply punishing the contemnor for past misconduct that was an affront to the court's dignity. *In re Contempt of Auto Club Ins Ass'n*, 243 Mich App 697, 713; 624 NW2d 443 (2000). On the other hand, if the court employs its contempt power to coerce compliance with a present or future obligation or to reimburse the complainant for costs incurred by the contemptuous behavior, including attorney fees, the proceedings are civil. *In re Contempt of Dougherty*, 429 Mich 81, 91-96; 413 NW2d 392 (1987); *In re Contempt of Calcutt*, 184 Mich App 749, 758; 458 NW2d 919 (1990); MCL 600.1721. Thus, there "are two types of civil contempt sanctions, coercive and

compensatory." *Dougherty, supra* at 97. Nevertheless, civil sanctions primarily intended to compel the contemnor to comply with the court's order may also have a punitive effect. *Id*. at 93; *DeGeorge, supra* at 592. " ' "If the contempt consists in the refusal of a party to do something which he is ordered to do for the benefit or advantage of the opposite party, the process is civil . . . . The order in such a case is not in the nature of a punishment, but is coercive, to compel him to act in accordance with the order of the court." ' " *Dougherty, supra* at 95, quoting *People ex rel Attorney General v Yarowsky*, 236 Mich 169, 171; 210 NW 246 (1926) (citation omitted).

Differentiating between civil contempt and criminal contempt is not easy because both forms of contempt might result in the contemnor's being imprisoned for willfully failing to comply with an order of the court. MCL 600.1701; MCL 600.1715. Thus, all contempt proceedings are referred to as " 'quasi-criminal' " or " 'criminal in nature.' " *Dougherty, supra* at 90, citing *Bessette v W B Conkey Co*, 194 US 324, 326; 24 S Ct 665; 48 L Ed 997 (1904), and Moskovitz, *Contempt of injunctions, civil and criminal*, 43 Colum L R 780 (1943). The distinction between civil and criminal contempt is important because "a criminal contempt proceeding requires some, but not all, of the due process safeguards of an ordinary criminal trial." *Dougherty, supra* at 91. A party charged with criminal contempt is presumed innocent, enjoys the right against self-incrimination, and the contempt must be proven beyond a reasonable doubt. *DeGeorge, supra* at 592; *Jaikins, supra* at 120-121. Further, a party accused of criminal contempt must "be informed of the nature of the charge against him or her and . . . be given adequate opportunity to prepare a defense and to secure the assistance of counsel." *DeGeorge, supra* at 592. In contrast, in a civil

contempt proceeding, the accused must be accorded rudimentary due process, i.e., notice and an opportunity to present a defense, and the party seeking enforcement of the court's order bears the burden of proving by a preponderance of the evidence that the order was violated. *Bowler v Bowler*, 351 Mich 398, 405; 88 NW2d 505 (1958); *Auto Club, supra* at 712-713.

Our review of the record in this case convinces us that by invoking its contempt power, the trial court was not trying to punish plaintiff for past misconduct because its dignity had been offended; it was instead attempting to coerce plaintiff into complying with its orders for parenting time and related orders intended to facilitate defendant's right to parenting time with his son. At the time of the July 27, 2007, show cause hearing, plaintiff was in violation of the trial court's past and then-current orders to provide defendant with two weeks of summer visitation "commencing June 30, 2007," and was then still under a future duty to provide defendant his two weeks of summer visitation and comply with other provisions of the court's parenting time order. See *Dougherty, supra* at 100. On entry of the contempt order of July 27, 2007, plaintiff could purge herself of contempt by paying the $1,000 sanction and complying with the order for specific makeup visitation. See *Auto Club, supra* at 712 ("Civil contempt ends when the contemnor complies with the court's order or is no longer able to do so *and* pays any fines or costs for the contempt proceedings.") (emphasis added); See, also, *Calcutt, supra* at 758, and MCL 600.1715(2). As this Court has observed, a party's parenting time rights might become meaningless if a court cannot enforce a visitation schedule through the use of its contempt powers. *Casbergue v Casbergue*, 124 Mich App 491, 494; 335 NW2d 16 (1983).

Our determination that the proceedings in this case to enforce the trial court's parenting time orders were civil, not criminal, is consistent with both caselaw and statutes governing domestic relations orders. In *Jaikins, supra* at 122, this Court held that contempt proceedings to enforce court-ordered visitation were civil and that the trial court erred when it did not permit the contemptuous party to purge himself of contempt. In a number of other cases, contempt proceedings to enforce visitation orders in divorce cases were held to be civil rather than criminal. See *Casbergue, supra* at 495; and *Watters v Watters*, 112 Mich App 1, 8; 314 NW2d 778 (1981). Moreover, under the Friend of the Court Act, MCL 552.501 *et seq.*, and the Support and Parenting Time Enforcement Act, MCL 552.601 *et seq.*, friends of the court are vested with the authority to initiate proceedings to enforce circuit court parenting time orders. MCL 552.644 authorizes a friend of the court to initiate civil contempt proceedings if administrative action to compel compliance with a parenting time order is unsuccessful. Although these statutory provisions apply to friends of the court, and therefore are not directly applicable to the present case where a party to a domestic relations matter directly initiates contempt proceedings, they express a policy that, generally, a trial court's invocation of its contempt authority to enforce a parenting time order is a civil proceeding.[3]

Next, we hold that defendant's failure to attach a supporting affidavit to his motions for orders to show cause as required by MCR 3.606(A) did not deprive the trial court of its jurisdiction over the contempt proceedings. We acknowledge that plaintiff cites a number of cases to support her argument. *In re Wood*, 82 Mich 75; 45 NW

---

[3] This is not to suggest that criminal contempt, where the only purpose is to punish the wrongdoer, may not be initiated in domestic relations case. See, e.g, *Henry, supra*.

1113 (1890); *Auto Club, supra* at 712-713; *In re Contempt of Robertson*, 209 Mich App 433; 531 NW2d 763 (1995); *In re Contempt of Nathan*, 99 Mich App 492, 494-495; 297 NW2d 646 (1980); *Michigan ex rel Wayne Prosecutor v Powers*, 97 Mich App 166, 168; 293 NW2d 752 (1980). But these and the similar cases cited are not helpful to us for a number of reasons, not the least of which is that most involve criminal contempt or apply statutes long since amended or superseded, or the pertinent portions are dicta. None of the cited cases applies current statutes or court rules governing domestic relations matters. For example, the seminal case, *Wood, supra* at 82, cites "How. Stat. §§ 7236, 7258, 7259" for the proposition that a proceeding for contempt committed not in the presence of the court "must be laid by affidavit." Section 7259, which is the predecessor of MCL 600.1711(2), provided that "when the misconduct charged was not committed in the presence of the court, 'the court shall be satisfied by due proof, *by affidavit*, of the facts charged, and shall cause a copy of such affidavit to be served on the party accused, a reasonable time to enable him to make his defense, except in cases of disobedience to any rule or order requiring the payment of money, and of disobedience to any subpoena.' " *Richter v Kabat*, 114 Mich 575, 580; 72 NW 600 (1897), quoting 2 How Stat 7259 (emphasis added.).

MCL 600.1711(2) now provides: "When any contempt is committed other than in the immediate view and presence of the court, the court may punish it by fine or imprisonment, or both, after proof of the facts charged has been made *by affidavit or other method* and opportunity has been given to defend." (Emphasis added.) Furthermore, MCL 552.511b(1) provides that the friend of the court "shall initiate enforcement under the support and parenting time enforcement act if the office receives *a written complaint* that states specific facts constituting a custody or parenting time order

violation." (Emphasis added.) And, the friend of the court may initiate civil contempt proceedings "by filing with the circuit court *a petition* for an order to show cause why either parent who has violated a parenting time order should not be held in contempt." MCL 552.644(1).

We agree that MCR 3.606(A) is the default court rule governing the initiation of contempt proceedings for conduct occurring outside the immediate presence of a court. See *Henry, supra* at 667, and *Auto Club, supra* at 712-713. Furthermore, the court rules govern practice and procedure in our courts. *Nathan, supra* at 493-494. Still, the court rules also suggest that a civil contempt proceeding in a domestic relations case may be initiated on a written complaint or petition stating sufficient foundational facts on which to base a finding of contempt. See *Michigan Gas & Electric Co v Dowagiac*, 273 Mich 153, 156; 262 NW 762 (1935) ("[N]o valid order adjudging defendants guilty of contempt can be made unless the *petition or affidavits* made the basis of the order set forth the nature and cause of the accusations against them by setting up facts sufficient to constitute contempt as a matter of law."). Subchapter 3.200 of the Michigan Court Rules governs domestic relations matters, including visitation with minors. MCR 3.201(A)(2)(b). With respect to the friend of the court, MCR 3.208(A) incorporates the provisions of the Friend of the Court Act, MCL 552.501 *et seq.*, and the Support and Parenting Time Enforcement Act, MCL 552.601 *et seq.* MCR 3.208(B) permits the friend of the court to initiate contempt proceedings on a petition for an order to show cause. With respect to parties, MCR 3.213 governs "Postjudgment Motions and Enforcement" and provides that "[p]ostjudgment motions in domestic relations actions are governed by MCR 2.119." The latter rule provides that a motion must "(a) be in writing, (b)

state with particularity the grounds and authority on which it is based, (c) state the relief or order sought, and (d) be signed by the party or attorney as provided in MCR 2.114." MCR 2.119(A)(1). MCR 2.119 does not require the filing of an affidavit, but if one is filed, it sets forth its required form. MCR 2.119(B); *In re Contempt of Steingold*, 244 Mich App 153, 158; 624 NW2d 504 (2000).

In Docket No. 285095, defendant filed his motion to show cause and attached to the motion several exhibits, including proof of service, letters, and e-mails. The motion itself did not satisfy the requirements of MCR 2.119(B) for affidavits. But it arguably stated with specificity facts regarding missed parenting time and telephone contact, which were sufficient to support a finding of contempt. *Mich Gas & Electric, supra* at 156; *Steingold, supra* at 158. The facts stated were also based on defendant's personal knowledge. *Id.* Furthermore, defendant signed the motion, declaring its statements "to be true to the best of [his] knowledge, information and belief." Defendant's certification of the motion for an order to show cause under MCR 2.114(D), as required by MCR 2.119(A)(1)(d), also rendered him subject to sanctions under MCR 2.114(E) if the allegations were untrue or submitted for an improper purpose. Thus, a motion for an order to show cause under MCR 2.119 and MCR 2.114 would accord protection against false allegations similar to that afforded by contempt proceedings initiated by affidavit. See *Campbell v Judge of Recorder's Court*, 244 Mich 165, 168; 221 NW 138 (1928).

Even assuming that MCR 3.606(A) applies in domestic relations cases, we still conclude that the lack of a notary affixed to defendant's petition for an order to show cause did not deprive the trial court of its juris-

diction to invoke its contempt powers in civil proceedings to enforce its own orders for parenting time, nor does the lack of notarization warrant setting aside the court's contempt orders. Once a circuit court obtains jurisdiction over divorce proceedings, it retains that jurisdiction over custody and visitation matters until the child attains the age of 18. MCL 552.17a(1); MCL 722.27(1)(c); *Harvey v Harvey*, 470 Mich 186, 193; 680 NW2d 835 (2004); *DenHeeten v DenHeeten*, 163 Mich App 85, 88; 413 NW2d 739 (1987). Moreover, Michigan courts have the inherent independent authority to punish a person for contempt. *Dougherty, supra* at 91 n 14; *Auto Club, supra* at 708-709. Consequently, even if the contempt proceedings were procedurally defective, the trial court was not deprived of its jurisdiction over the subject matter or the parties.

Contempt proceedings are referred to as quasi-criminal, see *Dougherty, supra* at 90, but even in a criminal case, an illegal arrest or arrest warrant issued on defective procedure will not divest a court of jurisdiction when the court has jurisdiction over the charged offense and the defendant appears before the court. See *People v Burrill*, 391 Mich 124, 127 n 2, 133; 214 NW2d 823 (1974); *People v Rice*, 192 Mich App 240, 244; 481 NW2d 10 (1991). The sole effect of an illegal arrest is the possible suppression of evidence recovered as a result of the arrest. *Id.* Similarly, in *People v Hawkins*, 468 Mich 488, 495; 668 NW2d 602 (2003), the Court specifically addressed a violation of MCR 3.606(A) in that a "bench warrant petition was technically deficient in that it was not supported by affidavits as required by" the court rule. The Court found that the violation did not warrant application of the exclusionary rule. *Hawkins, supra* at 512. The Court concluded that the violation of the "technical provisions" of the court rule should not result in the harsh remedy of the exclusion-

ary rule. *Id.* at 513. Likewise, here, we find the lack of a notary affixed to defendant's petition for an order to show cause insufficient to deprive the trial court of jurisdiction or warrant reversal of an otherwise proper finding of contempt. See *Stoltman v Stoltman*, 170 Mich App 653, 657; 429 NW2d 220 (1988) ("Imperfect verification of a pleading is not a jurisdictional defect and may be cured by amendment."). Our review of the record convinces us that plaintiff was accorded rudimentary due process, and there was sufficient evidence of a willful violation of the court's order. We therefore decline to reverse on the basis of a technical violation of MCR 3.606(A).

In Docket No. 284086, defendant filed his January 31, 2008, motion for an order to show cause indicating that plaintiff had not approved a consent order required by the parties' family counselor and also that defendant had not paid court-ordered sanctions and attorney fees. The monetary assessments, except for $35 payable to the trial court's reporter, were required to be paid to defendant's attorney. A copy of defendant's attorney's e-mail requesting that plaintiff sign the proposed consent order was attached to the motion. Like in defendant's earlier motion for an order to show cause, both defendant and his attorney signed the January 31, 2008, motion for an order to show cause, consistent with the requirements of MCR 2.114, but they did not have it notarized. Therefore, the January 31, 2008, motion did not satisfy the requirements of MCR 2.119(B)'s for affidavits. Nevertheless, the motion stated with specificity facts within the personal knowledge of defendant or his attorney regarding plaintiff's lack of cooperation with the counselor and plaintiff's failure to pay previously ordered sanctions and attorney fees. The motion contained sufficient facts and inferences to support the issuance of an order to show cause

why plaintiff should not be found in contempt of court. *Michigan Gas & Electric, supra* at 156; *Steingold, supra* at 158. Again, we are convinced that plaintiff was accorded rudimentary due process and that sufficient evidence supported the trial court's February 13, 2008, contempt order. MCL 600.1711(2). We decline to reverse on the basis of a technical violation of MCR 3.606(A).

We find plaintiff's remaining issues to lack merit. Plaintiff asserts that a different judge should have presided over the contempt proceedings. Plaintiff, however, did not make this request in the trial court; consequently, this argument is not preserved. *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 95; 693 NW2d 170 (2005). "We need not address issues first raised on appeal." *Id.* But, as noted, this issue is not meritorious. See *Henry, supra* at 675 ("The judge who presided over the proceedings in the context of which the indirect contumacious conduct occurred should preside over the contempt proceedings.").

Plaintiff next argues that the trial court erred by not conducting a hearing regarding her claimed indigence before finding her in contempt for failing to pay court-ordered sanctions and attorney fees. We find plaintiff's claim of poverty to be spurious and that the trial court did not err by summarily rejecting it. While the inability to comply with a court order might ordinarily be a defense to a charge of contempt, here, the record indicates that plaintiff's claim was without merit. At the December 19, 2007, show cause hearing, plaintiff's counsel admitted that plaintiff is a practicing attorney; she is married to a police officer, and she pays $16,000 a year in tuition so that the minor can attend a private school. In addition, plaintiff had the financial resources to employ counsel to contest every effort that defendant made to enforce the court's order providing that he

have minimal parenting time with his son. Consequently, we conclude that the trial court did not abuse its discretion by declining to conduct an evidentiary hearing.

Finally, plaintiff argues that the trial court abused its discretion by finding her in contempt for not cooperating with the family counselor because she would not approve a proposed consent order clarifying the counselor's responsibilities and authority that the counselor requested the parties to approve. The trial court's December 19, 2007, order provided: "The parties are referred to Siri Gottlieb, LMSW, JD, The Cooperative Parenting Center, LLC, Ann Arbor and shall attend and cooperate as directed by Ms. Gottlieb." As noted, Gottlieb requested that the parties approve a proposed order clarifying her role. Plaintiff refused. In the trial court she defended her position by arguing that if she had approved the proposed order, she would have waived her appellate rights. On appeal, plaintiff concedes her position below was legally untenable, citing *Ahrenberg Mechanical Contracting, Inc v Howlett*, 451 Mich 74; 545 NW2d 4 (1996). Now, plaintiff argues that requiring her to approve the order Gottlieb requested was contrary to MCR 2.602(B). We do not consider the merits of this legal argument because it was not preserved for appeal. *Polkton Charter Twp, supra* at 95. " 'A person may not disregard a court order simply on the basis of his subjective view that the order is wrong or will be declared invalid on appeal.' " *Johnson v White*, 261 Mich App 332, 346; 682 NW2d 505 (2004), quoting *In re Contempt of Dudzinski*, 257 Mich App 96, 111; 667 NW2d 68 (2003).

We affirm. As the prevailing party, defendant may tax costs pursuant to MCR 7.219.